IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HUBERT VAUGHN THOMAS,  ) <br> ID # 2090824,  ) <br>         Petitioner,  ) <br>                                                  ) <br> vs.                                           ) <br>                                                  ) <br> DIRECTOR, Texas Department of Criminal  ) <br> Justice, Correctional Institutions Division,  ) <br>         Respondent.                  ) | <br><br><br><br>No. 3:19-CV-957-B-BH<br><br><br><br>Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on April 19, 2019 (doc. 3). Based on the relevant filings and applicable law, the petition should be **DENIED** with prejudice.

### I.     BACKGROUND

Hubert Vaughn Thomas (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2016 conviction and life sentence in in the 86th District Court of Kaufman County, Texas. (*See* doc. 3 at 2.) The respondent is the Director of TDCJ-CID (Respondent). (*See id.* at 1.)

**A.     State Court Proceedings**

After first being charged by indictment, Petitioner was charged by amended indictment on August 12, 2016 with murder in Cause No. 15-50706-86-F in the 86th District Court of Kaufman County, Texas. (*See* doc. 15-24 at 8-9.)[2] The amended indictment added a paragraph to enhance

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers

the punishment range for the murder charge based on a prior 1997 second-degree felony conviction for possession of a controlled substance in Cause No. 7-93-474 in the 7th Judicial District Court of Smith County, Texas. (*See id.* at 9.) Petitioner pleaded not guilty to the murder charge but pleaded true to the enhancement paragraph, and he proceeded to trial in September 2016. (*See id.* at 7, 10.) On September 15, 2016, a jury found him guilty and sentenced him to life imprisonment in the TDCJ-CID. (*See id.* at 10; doc. 15-26 at 33, 37.) The judgment was affirmed on appeal. *See Thomas v. State*, No. 05-16-01103-CR, 2018 WL 3654908 (Tex. App.—Dallas Aug. 2, 2018, pet. ref'd.). On December 12, 2018, the Texas Court of Criminal Appeals refused his petition for discretionary review. *See Thomas v. State*, No. PD-0876-18 (Tex. Crim. App. Dec. 12, 2018).

Petitioner's first state habeas application, signed on January 16, 2019, was received by the state court on January 28, 2019. (*See* doc. 15-29 at 35-53.) On April 3, 2019, the Texas Court of Criminal Appeals denied the state habeas application without written order. (*See* doc. 15-23); *Ex parte Thomas*, No. WR-89,659-01 (Tex. Crim. App. Apr. 3, 2019). He filed two subsequent state habeas applications that were dismissed by the Texas Court of Criminal Appeals as subsequent applications under Tex. Code Crim. Proc. Art. 11.07, Sec. 4(a)-(c) on July 15, 2020, and June 2, 2021, respectively. *See Ex parte Thomas*, No. WR-89,659-03 (Tex. Crim. App. July 15, 2020); *Ex parte Thomas*, No. WR-89,659-04 (Tex. Crim. App. June 2, 2021).

**B.  Substantive Claims**

The § 2254 petition asserts the following grounds for relief:

(1) Ineffective Assistance Of Counsel 6th U.S.C.A.;

(2) Juror Bias "of the Right of fair trial" 5th 6th 8th and 14th U.S.C.A.;

(3) Procedural Due Process by the trial court "The right of a fair trial" 5th 7th 8th and 14th U.S.C.A.;

---

at the bottom of each filing.

  (4) Malicious Prosecution 5th 8th and 14th U.S.C.A.;

  (5) Double Jeopardy 5th U.S.CA.;

  (6) Ineffective Assistance of Counsel 6th U.S.CA.

(doc. 3 at 6, 9-10.)  Respondent filed a response on July 3, 2019.  (*See* doc. 14.)  Petitioner did not file a reply.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte*

*Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first and sixth grounds, Petitioner contends that counsel rendered ineffective assistance. (*See* doc. 3 at 6, 9-10.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A. **Continuance**

Petitioner contends counsel was ineffective because he "failed to request an oral 'Motion for Continuance' once the jury asked the court to let them review the video of Petitioner [sic] interview with the police in custody." (doc. 3 at 6.)

Here, the record shows that no video of Petitioner's interview with police was admitted during the trial. During deliberations in the guilt/innocence phase of the trial, the jury submitted a note to the trial court requesting to "'see the video of [Petitioner's] interview with police.'" (doc. 15-12 at 46-47; *see also* doc. 15-26 at 27.) Outside the presence of the jury, the trial court stated on the record, "There's been nothing admitted into evidence responsive to that request. So that will be the answer to that. 'Evidence responsive to your request has not been admitted.'" (doc. 15-12 at 47.) Neither party objected to the trial court's statement or proposed response, (s*ee id.*),

and it was submitted to the jury, (doc. 15-26 at 28).

Petitioner identifies no facts or evidence in the record to show that any video of an interview with police existed, and he has not asserted any valid basis on which counsel could have requested a continuance based on the jury's request for a video that was not in the record. Because counsel is not deficient for failing to file a futile or meritless motion, Petitioner has failed to satisfy the first prong of *Strickland*. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). He also offers no facts or evidence beyond conclusory allegations and speculation to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Miller*, 200 F.3d at 282 ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Accordingly, he also has not shown prejudice under *Strickland*.

This claim is without merit, and Petitioner has failed to show that the state court's rejection of it was unreasonable. The claim should be denied.

**B.   Enhancement Paragraph**

Petitioner contends that counsel was ineffective because it "was a conflict of interest, when he plead [sic] true to prior enhancement paragraph 793474 possession of control [sic] substance felony 2, when the Petitioner had the right to address the court with a plea of not true in order to make the STATE prove it." (doc. 3 at 8.) He argues that he pleaded "not guilty to the murder and would of [sic] insisted also with a plea of not true to prior enhancement paragraph." (*Id.*)

The record shows that the indictment under which Petitioner was convicted included a paragraph to enhance the punishment range for his offense based on his prior 1997 second-degree felony conviction for possession of a controlled substance in Cause No. 7-93-474 in the 7th Judicial District Court of Smith County, Texas. (*See* doc. 15-24 at 9.)   After the indictment was read at the start of the trial's punishment phase, the following exchange between the trial court and defense counsel took place:

> THE COURT:  And to the enhancement paragraph, how does your client plead? True or not true?
>
> [DEFENSE COUNSEL]:  He's going to plead true, Your Honor.
>
> THE COURT: All right.  Having pled true to the enhancement paragraph, we will now move forward with the punishment phase[.]

(doc. 15-12 at 50.)

Assuming for purposes of this motion only that counsel rendered deficient performance as alleged by Petitioner, *Strickland* also requires a showing of prejudice.[3]  To show prejudice, Petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. *Strickland*, 466 U.S. at 694.  Here, the record shows that after the exchange between the trial court and counsel, and after admonishments by the trial court, Petitioner expressly stated that he wished to plead true to the enhancement paragraph:

> THE COURT:  . . . You have pled true to the enhancement paragraph.  You do understand that does effectively increases [sic] the punishment range on this case.  Do you understand that?
>
> [PETITIONER]:  Yes, sir, Your Honor.

---

[3] To the extent Petitioner characterizes his claim as one involving a conflict of interest, an actual conflict of interest "exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  Here, the alleged conflict appears to be premised on a conflict between counsel's interests and those of Petitioner, rather than the interests of multiple clients, so *Strickland* provides the proper standard of review.  *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995).

>THE COURT: You understand instead of 5 to 99 or life, you are now looking at a range of punishment from 15 to 99 or life. Do you understand that?
>
>[PETITIONER]: I do, Your Honor.
>
>THE COURT: Okay. Even knowing that, do you still wish to plead true to the enhancement paragraph?
>
>[PETITIONER]: Yes, sir, Your Honor.

(*Id.* at 50-51.) The record evidence conclusively shows that Petitioner was advised about the impact to his punishment range if he pleaded true to the enhancement paragraph, confirmed his understanding, and still persisted with his plea of true to the enhancement paragraph. (*See id.*) Petitioner's conclusory statements contradicting his sworn testimony fail to overcome the "strong presumption of verity" accorded "[s]olemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). He has not shown prejudice under *Strickland*, or that the state court's rejection of this claim was unreasonable. The claim should be denied.

C.   **Failure to Challenge Juror**

Petitioner contends that counsel was ineffective because he "allowed for a juror to be selected after notice and testimony from the juror she knew the accused thus she also knows members of his family." (doc. 3 at 10.) He argues that juror Misti Wood[4] (Wood) knew him and his brother, and that she "went to school with [Petitioner] and knew the repartation [sic] [Petitioner's] brother carried an outcast and troublemaker and thus . . . [Wood] was unqualified and unable to render and [sic] impartial verdict." (*Id.*)

During jury selection, Wood stated that she was the victim of a violent crime in 1995, she

---

[4] Petitioner identifies the juror as Misty Woods, but the state records show that the juror's name is Misti Wood. (*See* doc. 15-9 at 85; doc. 15-28 at 18,30, 34; doc. 15-29 at 2.)

fought off her attacker and only suffered bruises, and her experience would not affect her service as a juror in any way. (*See* doc. 15-9 at 54-56.) She also stated that one of her cousins was a detective in Henderson County and another worked at the prison in Tennessee County. (*See id.* at 52-53.) The record shows that she did not say she went to the same high school as Petitioner, or that she knew him, his brother, or anyone else in his family. Beyond conclusory statements unsupported by the record, Petitioner offers no facts or evidence showing that Wood was actually biased, and he therefore has failed to show that counsel was deficient regarding her selection as a juror. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). His conclusory allegations of prejudice are also insufficient to show a reasonable probability that the outcome of his trial would have been different but for counsel's alleged deficiency. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042.

Petitioner has not shown that counsel was ineffective regarding Wood's selection as a juror, and he has not shown that the state court's rejection of this claim was unreasonable. The claim should be denied.

## IV. JUROR BIAS

In his second ground, Petitioner contends that juror Jeremy McCoy (McCoy) "was beneficial [sic] towards the STATE and the scales of justice was [sic] unbalanced against the Petitioner because this juror favored the state with a guaranteed guilty verdict and a crucial punishment and conviction of a LIFE sentence." (doc. 3 at 6.) He argues that McCoy "never should of [sic] been selected as a juror because the Kaufman County Sheriffs whose [sic] he's a friends [sic] with had interest in this case and Juror McCoy played a role in his decision making

10

to find [Petitioner] guilty in order to please his Sheriffs [sic] friends and depriving [Petitioner] a fair trial[.]" (*Id.* at 6, 8.)

The Sixth and Fourteenth Amendments guarantee a defendant a right to an impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 85 (1988); *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). The Supreme Court has defined an impartial juror not as one who has no preconceived notions, but instead, one who "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin,* 366 U.S. at 723.

During jury selection, McCoy asked what would happen if someone on the jury knew a witness who was called during the trial; he explained that he did not think he knew a witness in the case, but he knew "a couple sheriffs that are in Kaufman County." (doc. 15-9 at 31.) Following McCoy's question, the prosecution explained that a juror must be able to start all witnesses off the same, despite their relationships or experiences. (*See id.* at 32-33.) When the panel was asked whether anyone had any issues with starting everyone off the same, neither McCoy nor any other potential juror responded that they had an issue. (*See id.* at 33.) In response to a later question about whether anyone had a connection with law enforcement, McCoy stated, "I got a sheriff for Kaufman County. Then I got a correctional officer for prison." (*Id.* at 53; *see also id.* at 52.)

Petitioner does not provide any facts or evidence to show that McCoy had any preconceived notions or that he was incapable of laying aside impressions or opinion. Aside from conclusory allegations of bias, he also offers no facts or evidence to show that the county sheriffs who McCoy knew had an interest in his case, or that McCoy made his decision on Petitioner's guilt to "please his Sheriffs [sic] friends." (doc. 3 at 8.) Because "[m]ere conclusory statements do not raise a constitutional issue in a habeas case," his claim is without merit and does not entitle

11

him to § 2254 relief. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Accordingly, he has not shown that the state court's rejection of this claim was unreasonable, and the claim should be denied.

## V. TRIAL COURT ERROR

In his third ground, Petitioner contends that the trial court violated his right to a fair trial because the "jury inquired with the trial judge by a note during deliberation about wanting to review the interview with Petitioner and Police in custody. The jury was entitle [sic] to this evidence for their decision making." (doc. 3 at 7.) He argues that the trial court "should of [sic] ordered the STATE to retrieve the video into evidence and allow the jury to consider all evidence to keep the scales of justice balanced." (*Id.* at 7-8.) He generally alleges that the if the jury had viewed the video, there was "a possibility" that he would have been found not guilty or would have received a lower sentence. (*Id.* at 7.)

Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir.2011); *Creel v. Johnson,* 162 F.3d 385, 395 (5th Cir.1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" (citation omitted).

> [U]nder *Brecht,* a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

12

*Mayabb v. Johnson,* 168 F.3d 863, 868 (5th Cir.1999) (quoting *Woods v. Johnson,* 75 F.3d 1017, 1026-27 (5th Cir.1996)). To be entitled to federal habeas relief due to a trial error, Petitioner must show that the error actually prejudiced him. *See Brecht,* 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice from it. As discussed, the record shows that no video of Petitioner's interview with police was offered or admitted into evidence at trial. The trial court responded to the jury's request for a video with a statement that evidence responsive to the request had not been admitted. (doc.15-12 at 47; doc. 15-26 at 28.) Petitioner does not offer any evidence to show that any such video existed, what it would show, that it was in the record, or that the jury's consideration of it would have had a substantial effect or influence on the verdict given the large amount of evidence supporting his conviction, including a video of him killing the victim. Absent evidence in the record to support his allegations, this conclusory claim is without merit. *See Ross*, 694 F.2d at 1011. He has not shown that the state court's rejection of this claim was unreasonable, and it should be denied.

## VI. MALICIOUS PROSECUTION

In his fourth ground, Petitioner contends he was subjected to malicious prosecution because the prosecution "violated the Rules of Evidence 103-403, by showing an exhibit that had not been admitted into evidence exhibit #34 page #14 guilt and innocence." (doc. 3 at 7.) He argues that the "photo of the victims [sic] head or face the way he looked (dead) eyes opened rolled in the back of his head, this caused the possibility of the jury to feel compassion towards victim either [sic] though he had bullied Petitioner in front of his wife." (*Id.*) He claims that he "was guilty before his lawyer could of [sic] presented his defence [sic] because of this photo being seen by the jury, when the photo was not offered into evidence Rule 103 TRE." (*Id.*)

The record refutes Petitioner's allegations about the content of Exhibit No. 34 and

whether it was admitted into evidence. Exhibit No. 34 does not show the deceased victim's face or eyes as alleged; it shows the bullet hole injury at the top of the victim's head. (*See* doc. 15-11 at 14; doc. 15-19 at 42.) During the trial, Petitioner's counsel objected to Exhibit No. 34 and moved for a mistrial on the grounds that he believed the exhibit was shown to the jury before it was offered into evidence. (*See* doc. 15-11 at 14-15, 17, 19.) He also objected that the probative value of the exhibit was outweighed by its prejudicial effect. (*See id.* at 16.) The prosecution disputed that the jury saw the exhibit before it was offered into evidence; it also argued that it was necessary to go through each of the victim's bullet wounds with the testifying medical examiner to establish the manner or cause of death, and that the exhibit was offered to show the main bullet injury to the victim's head. (*See id.* at 17-19.) After hearing arguments by the parties, the trial court determined that the "probative value on this particular [Exhibit No. 34] is substantially outweighed by any undue prejudice," overruled the defense's objection, admitted the exhibit, and denied the motion for a mistrial. (*Id.* at 19-20.) Petitioner has not shown that the prosecution violated state evidentiary rules or that the probative value of Exhibit No. 34 in showing the main bullet injury at the top of the victim's head was substantially outweighed by the danger of unfair prejudice.[5] Accordingly, he has not shown that the state court's rejection of this claim was unreasonable, and the claim should be denied.[6]

---

[5] To the extent Petitioner intended to refer to Exhibit Nos. 7, 29, 31, or 32, all of which show the deceased victim's head or face and open eyes, his claim fails. (*See* doc. 15-19 at 9, 25, 39-40.) The record shows that Exhibit Nos. 7, 31, and 32 were offered and admitted into evidence; Exhibit No. 29 was admitted for record purposes only. (*See* doc. 15-10 at 61-66, 74; doc. 15-11 at 8-9.) The record does not show that any of these exhibits were seen by the jury when they were not admitted, and Petitioner offers no evidence or facts to the contrary. He has not shown that the prosecution violated any evidentiary rules regarding these exhibits, and his claim is therefore without merit. He has failed to show that the state court's rejection of the claim was unreasonable, and the claim should be denied on this basis.

[6] In his fourth ground, Petitioner also argues that "counsel's move [sic] for a mistrial should of [sic] been granted because the STATE shifted the burden of PROOF and the probative value was out-weighed, by unfair and [sic] prejudice. (doc. 3 at 8.) To the extent this statement can be liberally construed as raising an independent ground for habeas relief, Petitioner's conclusory statements are not supported by the record and are insufficient to warrant habeas relief. *See Schlang*, 691 F.2d at 799; *Ross*, 694 F.2d at 1011. He also has failed to show that the state court's rejection of this claim was unreasonable. Accordingly, to the extent considered, this separate ground for relief should be denied.

## VII. DOUBLE JEOPARDY

In his fifth ground, Petitioner contends that the prosecution "committed double jeopardy against [Petitioner], by showing before the jury exhibit #34 photo evidence of the victim (head) or face with his eyes rolled in the back of his head, which judgment then and there set in the heart of the juror's [sic] but [the prosecution] did not introduce this evidence in accordance of [sic] TRE 103." (doc. 3 at 9.)

The Fifth Amendment's Double Jeopardy Clause, which provides that "[n]o person shall … be subject for the same offence to be twice put in jeopardy of life or limb," U.S. CONST. amend V, "protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *United States v. Paternostro*, 966 F.2d 907, 910 (5th Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

Here, Petitioner alleges that the "state shifted the burden of proof to the defense when exhibit #34 had not been offered under TRE 103." (doc. 3 at 9.) He also alleges that the prosecution "submitted or showed incriminating evidence against the Petitioner that the probative value of photographs, substantially outweighed by the danger of unfair prejudice presented before the jury before it had been offered under Rule 103, now the defense has been left with the burden of guilty until proven innocent-opposite from the statute."[7] (*Id.*) These allegations do not show that he was prosecuted a second time after an acquittal or conviction, or that he received multiple

---

[7] As discussed, Exhibit No. 34 was a photo showing the bullet hole at the top of the deceased victim's head, not his face or eyes as alleged by Petitioner. (*See* doc. 15-11 at 14; doc. 15-19 at 42.) Defense counsel objected to it during trial, arguing that it was shown to the jury before being offered into evidence, and that its probative value was outweighed by its prejudicial effect. (*See* doc. 15-11 at 14-19.) The trial court determined that the "probative value on this particular [Exhibit No. 34] is substantially outweighed by any undue prejudice," overruled the defense's objection, and admitted the exhibit. (*Id.* at 19-20.) Petitioner's conclusory allegations regarding Exhibit No. 34, unsupported by the record, do not warrant § 2254 relief. *See Schlang*, 691 F.2d at 799; *Ross*, 694 F.2d at 1011.

convictions for the same offense. *See Paternostro*, 966 F.2d at 910. Further, the record shows that he was prosecuted only once for the murder of the victim in the challenged case, and he has offered no evidence to show otherwise. His double jeopardy claim, refuted and unsupported by the record, is therefore without merit. He has failed to show that the state court's rejection of this claim was unreasonable, and the claim should be denied.

## VIII. RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on April 19, 2019 (doc. 3), should be **DENIED** with prejudice.

**SIGNED this 31st day of January, 2022.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE